# Commonwealth v. Krause

C.P. of Lehigh County, nos. 3984/2009 and 5428/2008.

*Joan L. Reinsmith, senior deputy district attorney*, for Commonwealth.
*Joseph v. Sebelin Jr.*, for defendant.

DANTOS, *J.*, October 27, 2010—Defendant, Terry Lee Krause, has filed an appeal from this court's order of August 23, 2010, which denied the defendant's post sentence motions. Accordingly, we are issuing this opinion pursuant to the provisions of Pennsylvania Rule of Appellate Procedure 1925.

The relevant facts are as follows: On July 1, 2010, after a trial, a jury found the defendant guilty of the crimes of stalking (18 Pa. C.S.A. § 2709.1(a)(1)) and terroristic threats (18 Pa. C.S.A. § 2706(e)). Thereafter on August 11, 2010, this court sentenced the defendant to a term of state imprisonment of not less than one (1) year nor more than two (2) years on the charge of terroristic threats. On the same date, the defendant was sentenced to a term of state imprisonment of not less than two (2) years nor more than five (5) years on the charge of stalking, consecutive to the sentence imposed on the charge of stalking. The sentences imposed were beyond the aggravated range of the sentencing guidelines, but below the statutory minimums and maximums. Thereafter, on August 17, 2010, the defendant filed a motion for post sentence relief

pursuant to Pennsylvania Rule of Criminal Procedure Rule 720. This motion was denied by this court on August 23, 2010. Defendant's within appeal followed on September 3, 2010.

On September 16, 2010, this court instructed the defendant to file of record and serve upon this court a concise statement of errors complained of on appeal no later than October 7, 2010, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). Defendant complied with this order. In his concise statement of errors complained of on appeal, the defendant asserts that: (1) this court committed an error of law and/or an abuse of discretion in sentencing the defendant for the crimes of terroristic threats and harassment [sic][1]; (2) the sentence was excessively harsh; and (3) this court erred in consolidating the within two separate criminal cases for trial. We cannot agree with the defendant's assertions.

## Challenging the Sufficiency of the Evidence

The defendant asserts that this court committed an error of law and/or an abuse of discretion in sentencing the defendant for the crimes of terroristic threats and stalking. While this allegation is vague, and amounts to only a bald assertion, this court will address a challenge to the sufficiency of the evidence in an abundance of caution.

A claim challenging the sufficiency of the evidence is a question of law which asserts that there is insufficient evidence to support at least one material element of the crime for which the defendant was convicted.

---

1. The defendant was sentenced for terroristic threats and stalking. The defendant was not sentenced for harassment.

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003). The standard for reviewing sufficiency challenges was explained in the following manner by the Superior Court of Pennsylvania:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Taylor*, 831 A.2d 661, 663 (Pa. Super. 2003), quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Hunzer*, 868 A.2d 498, 505 (Pa. Super. 2005). Any doubts regarding a defendant's guilt are properly resolved by the finder of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. *Id.* Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Id.* If the finder of fact reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. *Id.* at 506.

A "person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa. C.S.A. §2706(a)(1). Moreover, as used in this section, the term "communicates" means

to convey "in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions." 18 Pa. C.S.A. §2706(e).

Furthermore, a "person commits the crime of stalking when the person engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa. C.S.A. §2709.1(a)(1).

In the instant case, the evidence established that Jamie Krause was married to the defendant, Terry Lee Krause, for sixteen (16) years when she filed for divorce in July of 2008. Despite having filed for divorce, Jamie Krause and the defendant continued to live in the marital residence located at 4561 Scheidys Road, North Whitehall Township, Lehigh County, Pennsylvania. (C. Ex. 4). However, after being served with the complaint in divorce, the defendant would not verbally communicate with Jamie Krause. The only means of communication was through a dry erase white board on the kitchen counter. The defendant left messages such as, "Good luck, this is just the beginning," "Good luck, you are going to need it" and profanities. (C. Ex. 5; C. Ex. 6).

Not only did the defendant leave such written messages, but in October of 2008, the defendant pushed a television in front of the door to block Jamie Krause's ingress into the residence. Additionally, on October 26, 2008, when Jamie Krause returned home she observed a Bursa Thunder 380 pistol in a box on the kitchen counter with bullets. (C. Ex. 1; C. Ex. 2) The next morning, after

the defendant left the residence, the handgun and bullets were gone. Upon the defendant's return to the marital residence that night at approximately 10:00 p.m., the pistol (without the box) and the bullets were again left on the kitchen counter. (C. Ex. 3)

Chris Depremio, defendant's friend and co-worker at the Faulkner dealership located on Stoke Park Road in Bethlehem, Pennsylvania, spoke with the defendant on multiple occasions with regards to the defendant's impending divorce. In September of 2008, the defendant told Mr. Depremio that his will was drafted in such a way that all of the marital assets would go to the surviving spouse, and upon the surviving spouse's death, to either his daughter or Jamie Krause's niece. The defendant then stated that it would be easier to shoot his estranged wife to inherit her share of the marital property, and then shoot himself, thereby leaving his assets to his daughter. In response, Mr. Depremio asked the defendant, "You would not do that?" The defendant did not verbally respond to this inquiry.

A couple of weeks after this conversation occurred, Mr. Depremio received a telephone call from the defendant. The defendant told him that he had purchased a gun at Cabela's[2] but was unable to get the slide to function. (C. Ex. 13) Again, Mr. Depremio sought reassurances from the defendant and asked, "You're not going to do anything stupid with the gun?" After a pause, the defendant indicated that he had purchased the firearm for self defense. Troubled by the conversation, Mr. Depremio

2. Barbara Kilmer, the Firearm Administrator at Cabela's, indicated that on October 26, 2008, the defendant effectuated a legal firearms purchase from Cabela's.

contacted Russell Gallante, another co-worker at the Faulkner dealership, to discuss the matter with him. It turned out that the defendant had spoken to Mr. Gallante concerning his divorce as well. Again, the main topic of discussion was the defendant's concern that his daughter obtain the marital assets. The defendant reiterated that if Jamie Krause would die first, his daughter would be the beneficiary of his will. Mr. Gallante urged the defendant not to think that way and to not do "anything crazy." Nevertheless, approximately two (2) weeks later, after the defendant had a telephone conversation with his daughter, the defendant stated to Mr. Gallante that he would not do anything stupid, but that he could not promise the same once his daughter got married in January of 2009.

In light of the foregoing, Mr. Depremio and Mr. Gallante decided to inform Jamie Krause of the conversations that transpired between the defendant and Mr. Depremio. Consequently, the next day, October 28, 2008, at approximately 6:00 a.m., Mr. Depremio and Mr. Gallante confronted Jamie Krause at her family-owned restaurant located on Route 309, Orefield. Jamie Krause was quite concerned and upset by what she had been told and she reported this to Trooper Richard Webb of the Pennsylvania State Police, Bethlehem barracks.[3]

On the same day, Jamie Krause sought and was granted a protection from abuse order which excluded

---

3. Trooper Webb interviewed Jamie Krause, as well as spoke with Mr. Depremio and Mr. Gallante via the telephone. Then Trooper Webb contacted the Office of the District Attorney to approve the charge of terrorist threats to be filed against the defendant. A warrant for the defendant's arrest was prepared, and ultimately the defendant was apprehended. Trooper Webb went to the marital residence to retrieve the pistol purchased from Cabela's, the ammunition and a rifle. Trooper Webb served the defendant with the protection from abuse order in prison. (C. Ex. 14; C. Ex. 16; C. Ex. 17)

the defendant from the marital residence and provided a "no contact" provision with Jamie Krause. Nonetheless, on or about November 23, 2008, the defendant left an anniversary card on Jamie Krause's vehicle. Additionally, Jamie Krause observed the defendant drive sit outside and ultimately drive by her parents' home in December of 2008. The same day she witnessed the defendant drive by the marital residence when she was taking out the garbage cans. On December 16, 2008, the defendant was found in contempt of the protection from abuse order. (C. Ex. 7)

Additionally, in January and/or February of 2009, Jamie Krause's mail disappeared for approximately one (1) week. As a result, Jamie Krause watched her mailbox to determine the cause of the disappearance. Jamie Krause observed the defendant removing the mail from her mailbox. Furthermore, during these months, the defendant would drive past her home and follow her while driving. Moreover, Jamie Krause's bird bath was vandalized at the marital residence, and her driveway sensors were stolen. Thereafter, on June 10, 2009, Jamie Krause's garbage cans were stolen. On that same date, the defendant had contacted his mother-in-law to convey a message to Jamie Krause, as well as telephoned her three (3) times in the evening. (C. Ex. 8) Then, on July 7, 2009, after hearing, the defendant was found in contempt of the protection from abuse order. (C. Ex. 9)

Despite this finding of contempt, the next day, July 8, 2009, at approximately 3:30 p.m., Jamie Krause saw the defendant driving his Silver Chevrolet Colorado on Scheidys Road, beeping the horn. On the night of July 9, 2009, Jamie Krause received three (3) telephone calls from a number that she did not recognize. (C. Ex. 10) Then on July 10, 2009, at 4:20 a.m., Jamie Krause received a

telephone call from the same unknown numbers. (C. Ex. 10) This time a message was left by the defendant in which he was groaning and grunting. At 5:05 a.m., while Jamie Krause was pulling out of her driveway, she viewed the defendant in his car at the bottom of her driveway, traveling slowly. Jamie Krause proceeded to work, but encountered the defendant again honking his car horn and flashing his headlights. The defendant did not observe the traffic control devices and went through a stop sign, thereby nearly striking Jamie Krause's vehicle. (C. Ex. 12) Jamie Krause contacted the Pennsylvania State Police.

Trooper Jay Splain of the Pennsylvania State Police responded to the dispatch of a violation of a protection of abuse order by the defendant. Trooper Splain met with Jamie Krause at a Hess Station on Route 309, where she was interviewed. Jamie Krause appeared to be distraught over the events that transpired. Trooper Jonathan Gerken was dispatched to the defendant's residence located at 3240 Eisenhower Avenue, Allentown, Lehigh County. Trooper Gerken, along with Trooper Nederostok, located the silver Chevrolet Colorado a that address. The hood of the vehicle was warm to the touch, indicating that the vehicle had been driven recently. Additionally, the vehicle did not appear freshly washed. The defendant was taken into custody. At the Pennsylvania State Police barracks, the defendant provided a written statement of the incident at approximately 5:30 a.m. (C. Ex. 15) He indicated that at 5:00 a.m. he drove his vehicle to the Egypt Car Wash in Egypt, Pennsylvania. (C. Ex. 15) However, the car wash did not open until 6:00 a.m. (C. Ex. 15) There was no legitimate reason for the defendant to be in that area at

458

that time.[4]

Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, it is clear that the evidence was sufficient to enable a finder of fact to conclude that all the elements of the offenses were established beyond a reasonable doubt. Indeed, at the conclusion of the jury trial, the jury had no doubt that the defendant communicated a threat to commit a crime of violence with intent to terrorize Jamie Krause, and engaged in a course of conduct, including following Jamie Krause without proper authority, under circumstances which demonstrated an intent to place Jamie Krause in reasonable fear of bodily injury or to cause substantial emotional distress to her.

## Challenging the Weight of the Evidence

The defendant asserts that this court committed an error of law and/or an abuse of discretion in sentencing the defendant for the crimes of terroristic threats and stalking. Again, because this allegation is so vague and provides this court with no basis for the challenge, this court, to be prudent, will address the issue of whether the verdict was against the weight of the evidence. This court notes that a motion alleging that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends that it is against the weight of the evidence. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000); *Commonwealth v. Bennett*, 827 A.2d

---

4. Between October 28, 2008 and July 10, 2009, the Pennsylvania State Police responded five (5) times to incidents involving Jamie Krause and the defendant. Trooper Webb did not doubt the veracity of Jamie Krause's statements, and he perceived her emotional state to be terrorized.

469, 481 (Pa. Super. 2003). Furthermore, a challenge that the verdict is against the weight of the evidence requires this court to conclude in its discretion that "the verdict is so contrary to the evidence as to shock one's sense of justice." *Lyons*, 833 A.2d at 258. Indeed, for a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Shaffer*, 722 A.2d 195, 200 (Pa. Super. 1998). See also *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

From the evidence recounted above, it is reasonable to have concluded that the defendant communicated a threat to commit a crime of violence with intent to terrorize Jamie Krause, and engaged in a course of conduct, including following Jamie Krause without proper authority, under circumstances which demonstrated an intent to place Jamie Krause in reasonable fear of bodily injury or to cause substantial emotional distress to her. Accordingly, the defendant's challenge to the weight of the evidence must fail.

### Excessive Sentence

Next, the defendant argues this court erred in imposing an excessively harsh sentence. The defendant is challenging the discretionary aspects of sentencing. *Commonwealth v. Bishop*, 831 A.2d 656, 660 (Pa. Super. 2003). Initially this court notes that:

> Sentencing is within the sound discretion of the sentencing judge, and that decision will not be disturbed absent an abuse of discretion. *Commonwealth v. Jones*, 418 Pa. Super. 93, 613 A.2d 587, 591 (1992)(en banc). "To constitute an abuse of discretion, the sentence

imposed must either exceed the statutory limits or be manifestly excessive." *Commonwealth v. Gaddis*, 432 Pa. Super. 523, 639 A.2d 462, 469 (1994). Nevertheless, sentencing guidelines are merely advisory, and the court may, in its discretion, sentence outside the guidelines. When a trial court deviates from the guidelines, it must state its reasons for deviation on the record at the time of sentencing or in a contemporaneous written statement. *Commonwealth v. Lawson*, 437 Pa. Super. 521, 650 A.2d 876, 881 (1994). The court must also consider the guidelines as a starting point and deviate so as to impose a sentence consistent with both the public's safety needs and the defendant's rehabilitative needs. *Id.*

*Commonwealth v. Shaffer*, 722 A.2d 195, 198-199 (Pa. Super. 1998). If "the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable," its responsibilities have been fulfilled and the appellate courts will not disturb the sentence. *Commonwealth v. Gibson*, 716 A.2d 1275, 1277 (Pa. Super. 1998).

In the instant case, the defendant's sentences imposed were beyond the aggravated range, but set below the statutory minimum and statutory maximum. Therefore, the defendant's sentence must be evaluated to determine if it was "manifestly excessive." To do so, the following considerations must be examined:

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and

the defendant's display of remorse, defiance, or indifference. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa. Super. 1997). Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. 42 Pa. C.S.A. §9721(b). When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range. *Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003) (citations omitted).

Moreover, "[i]t is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super. 2006); see also *Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006); *Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa. Super. 2003). The defendant must demonstrate that a substantial question exists concerning the sentence. *Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa. Super. 2005). Furthermore, a substantial question requires something more than an allegation that the sentences imposed are excessive or harsh. *Ladamus*, 896 A.2d at 595. Consequently, defendant's assertion that this court abused its discretion by imposing an excessive and harsh sentence fails to present a substantial question to justify a review of his claim.

Additionally, even if the merit of the defendant's sentencing claim were addressed, defendant's argument must fail. The defendant's sentence must initially be evaluated to determine if there was an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). The standard of review has been explained in the following manner:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006), citing *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999)(en banc).

Additionally, it is axiomatic that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. *Commonwealth v. Booze*, 953 A.2d 1263, 1279 (Pa. Super. 2008). Long-standing precedent recognizes that 42 Pa. C.S.A. §9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. 42 Pa. C.S.A. § 9721. See also *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008); *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). "A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary

aspects of sentence." *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005). Indeed, the Superior Court of Pennsylvania has stated: "We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently." *Commonwealth v. Hoag*, 445 Pa. Super. 455, 665 A.2d 1212, 1214 (1995).

This court considered all the required statutory factors in sentencing the defendant. Indeed, in imposing the defendant's sentence, this court considered the "protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs, and the sentencing guidelines." 42 Pa. C.S.A. §9721(b); *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008).

In fashioning its sentence, this court considered the impact on the victim and the need to protect her from the defendant, the protection of the community, the fact that the defendant committed another offense while he was released on bail, and defendant's numerous violations of protection from abuse orders directing him to refrain from contacting the victim. This court deemed that the guidelines do not adequately reflect the repetitive, obsessive and erratic behavior of the defendant.

Also, this court did not fail to consider mitigating factors, such as defendant's lack of a violent criminal history. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988) (holding that where a pre-sentence report exists, there is a presumption that the sentencing judge was aware of and adequately considered information relevant to the defendant's character, as well as any mitigating factors). This court thoroughly reviewed the pre-sentence investigation report prepared on July 30, 2010. This court

was aware of the defendant's age, defendant's childhood and history of abuse, defendant's prior suicide attempts, defendant's history of residency, defendant's prior criminal history, the recommendation of the Lehigh County Department of Adult Probation, defendant's employment history and the facts elicited at the time of trial.

Using its discretion, this court imposed a sentence that was within the guidelines and within the law.

## CONSOLIDATION OF CASES

Finally, the defendant contends in his concise statement of errors complained of on appeal that case no. 5428/2008 should have been tried separately from Case no. 3984/2009. The decision to sever offenses is within the sound discretion of the trial court and will be reversed only for a manifest abuse of discretion. *Commonwealth v. Apollo*, 542 Pa. 47, 665 A.2d 439 (1995). See also *Commonwealth v. Collins*, 703 A.2d 418, 422-423 (Pa. 1997). Rules of Criminal Procedure 582 and 583 govern the joinder and severance of offenses and defendants, and provide in relevant part as follows:

Rule 582. Joinder - Trial of Separate Indictments or Informations

(A) Standards

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or (b) the offenses charged are based on the same act or transaction.

Rule 583. Severance of Offenses or Defendants

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa. R.Crim.P. 582; Pa. R.Crim.P. 583. Reading these two Rules of Criminal Procedure together, the Supreme Court of Pennsylvania has set forth the following three (3) part test for deciding a motion to sever:

Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and if the answer to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses. *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 496-497 (1988).

Pursuant to the *Lark* test, a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other. Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. *Commonwealth v. Newman*, 528 Pa. 393, 598 A.2d 275 (1991). However, evidence of other crimes is admissible to demonstrate motive; intent; absence of mistake or accident; a common scheme, plan or design embracing the commission of two or more crimes so related to each other

that proof of one tends to prove the others; or the identity of the person charged with the commission of the crime on trial. *Id.* Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts. *Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005). In general, if evidence of one set of charges would be admissible at trial on the other, and if the defendant will not be unduly prejudiced by a joinder of the charges, then joinder of the charges is allowable and serves judicial economy. *Commonwealth v. Spetzer*, 722 A.2d 702, 714 (Pa. Super. 1998).

The defendant was charged with terroristic threats in case no. 5428/2008. In case no. 3984/2009, the defendant was charged with stalking. First, it was determined that the evidence of both of the offenses was admissible in a separate trial for the other. Indeed, evidence of distinct crimes is admissible to show a common plan, scheme or design embracing commission of multiple crimes or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. *Newman*, 598 A.2d at 278. The facts of these cases clearly demonstrated a continuing course of conduct by the defendant, and thus would have been admissible in a separate trial for the other. An underlying theme of both of these charges dealt with the defendant's escalating aggressive behavior toward Jamie Krause. There was a sufficient nexus between the cases to constitute a chain or sequence of events that formed the history of the case, and was part of the natural development of the case.

Next, it was determined that the evidence of the different counts of the informations was capable of separation by the jury. Where a trial concerns distinct criminal offenses

that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence. *Collins,* 703 A.2d at 423. In the instant case, the incidents involved separate events that occurred over a year time span. The first case stemmed from incidents that occurred from July of 2008 through October 28, 2008, and the second case occurred in July of 2009.

Lastly, the defendant was not prejudiced by the consolidation of these offenses. As the Pennsylvania Supreme Court states in *Lark*:

> [t]he prejudice of which Rule 1128 [now rule 583] speaks is not simply prejudice in the sense that [defendant] will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which Rule 1128 [now rule 583] speaks is, rather, that which would occur if the evidence tended to convict [defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. *Lark,* 518 Pa. at 307, 543 A.2d at 499.

Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial. This not grounds for severance by itself. *Collins,* 703 A.2d at 423. In the instant case, the defendant was charged with separate offenses that occurred over a year time span. There was no prejudice in permitting the jury to convict the defendant upon distinct, yet interrelated, evidence of those crimes.

Based on the foregoing, the defendant's appeal should be dismissed.