J-S28025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS ANGEL CRUZ | : | |
| | : | |
| Appellant | : | No. 1443 MDA 2017 |

Appeal from the Judgment of Sentence, June 19, 2017,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0003831-2014.

BEFORE: OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 17, 2018**

Luis Angel Cruz appeals from the judgment of sentence, after a jury convicted him of multiple charges of child molestation and rape,[1] resulting in an aggregate sentence of 35 – 70 years of incarceration. Discerning no abuse of discretion by the trial court, we affirm.

In 1995, Cruz pleaded guilty in Dauphin County to several of the same charges he faced in this case. Prior to trial in this matter, the Commonwealth filed a motion to admit the testimony of Cruz's previous victim under Pennsylvania Rule of Evidence 404(b). Cruz filed a response objecting to the prior-bad-act testimony. The trial judge granted the Commonwealth's motion and allowed that testimony.

---

[1] **See** 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 3123(b); 18 Pa.C.S.A. § 3125(a)(7); 18 Pa.C.S.A. § 6318(a)(1); 18 Pa.C.S.A. § 3126(a)(7); **and** 18 Pa.C.S.A. § 6301.

At trial, the Commonwealth called three witnesses: (1) the complainant in this case, (2) her mother, and (3) Cruz's prior victim from the 1995 case. Only the testimony of the current complainant and prior victim are relevant to this appeal.

Originally from Puerto Rico, the female complainant, her mother, and two sisters moved to Harrisburg in 2006. The complainant was eight at that time. The family resided in a shelter when they first arrived in Pennsylvania, but then the complainant became a resident patient at a psychiatric hospital for her anger issues. After a few months of treatment, she returned to live with her mother at the shelter and met Cruz, her mom's new boyfriend. At the time, Cruz rented a bedroom at a nearby building, and they would visit him often.

According to the complainant, Cruz molested her almost immediately:

> I would find myself upstairs with him, and after a little bit – it started – it started off with the touching. Like, the touching of my private areas . . . My chest. My butt . . . It started off as on top of clothes.

> **Q:** Did he ever touch you underneath your clothes?

> **A:** Yes.

N.T., 6/6/17, at 40.

While the complainant could not recall how long this groping in Cruz's room continued, she and her family eventually moved out of the shelter into low-income housing. She was about nine or ten at the time. Cruz moved in with them and things "escalated from there." *Id.* at 43. Late at night, "when

- 2 -

everybody was asleep," the complainant explained that Cruz "would come into the room, crack the door." *Id.* at 44. She testified that Cruz:

> would prepare himself. Take off his shoes at the bottom of the bed. Touch me. Tell me not to make a noise. Don't alert anybody. And once all that was done, he would get under the covers, take off my pants, start touching me in my private areas. Then the licking and kissing the ear. And at times he smelled like alcohol . . . He would touch my chest, my butt, my vagina. It was more of, like, trying to soothe me, but for me it wasn't.

*Id.* at 45. At some point, Cruz inserted his penis into her vagina, causing her to bleed.

He also attempted anal intercourse, but the complainant was in so much pain that he had to stop. She testified that Cruz "was probably, like, halfway [in] until the point I was whimpering and crying with tears in my eyes about to make some noise." *Id.* at 90.

The Commonwealth attempted to elicit testimony that Cruz performed cunnilingus on the complainant, but to no avail. *See Id.* at 47, 49. It did, however, prove that Cruz would force the complainant to rub his genitalia with her hands. "At times he would grab my hand and move – put it on his penis and try to have me massage it." *Id.* at 47.

Eventually, Cruz would climax onto the floor, "grab a tissue or rag and wipe it up." *Id.* at 48. He repeated these offenses "very often," so regularly, in fact, that the complainant "believe[d] it was every night." *Id.*

Afterwards, Cruz threatened the girl, her siblings, and her mother harm, if she did not remain quite about the assaults. He also bought her gifts, "bribing" the complainant "to keep [her] mouth shut." *Id.* at 51.

Cruz and the girl's mother broke up for unrelated reasons. Several years later, the complainant first came forward with her accusations against Cruz when she was detained on juvenile charges for assaulting her mother.

As its final witness, the Commonwealth called the victim of Cruz's prior conviction, who testified that, when she was twelve-years-old, Cruz, her mother's ex-boyfriend, was living with her, her mom, and her brother. He assaulted her one time, right before he moved out. She testified that "late at night, maybe twelve to one o'clock in the morning," she "was asleep." *Id.* at 123.

The victim could not recall whether the event took place in her bedroom or her mom's bedroom. *Id.* But, because she would later testify that her mother "was asleep . . . in her bedroom," the only reasonable inference is that the assault took place in the victim's bedroom. *Id.* at 126.

She recounted the incident in her room as follows:

> He started kissing me along my neck. I was sleeping on my stomach. He started kissing me along my neck and kind of woke me up. At that point he kind of turned me over and stated kissing me on my front of my neck and pulled my shirt up and kissed me all the way down to my vagina area . . . He basically just – just told me to that I was going to enjoy it . . . when he kissed me down to my vagina, at that point he had me put my hands on his penis basically to get him aroused. And then he tried to put his penis inside of . .

- 4 -

. [my] vagina . . . He put my hands on his penis . . . He had
me, like, kind of stroke him.

*Id.* at 123 – 125.  This lasted about ten minutes but stopped when the victim "pushed him off."  *Id.* at 126.

Cruz smelt like alcohol during this previous assault.  He also ejaculated. Both the complainant and Cruz's previous victim are Latinas.

Cruz raises one issue on appeal.  He phrases it as "*did not the court err in permitting the Commonwealth to introduce prior crimes evidence detailing a sexual assault involving a person other than the complainant when such activities were remote from the events on trial and when the other incident was not sufficiently similar to the currently charged offense to constitute a 'signature?'*" Cruz's Brief at 5 (emphasis added).  The Commonwealth restates the issue as "whether the lower *court properly granted* [its] motion *in limine* to introduce certain 'prior bad act' evidence under Pa.R.E. 404(b)" – which essentially asks the same question in a different manner.  Commonwealth's Brief at 1 (emphasis added).  Given our scope and standard of review[2] on

---

[2] Scope of review and standard of review are so critical to an appropriate appellate review, that all appellants must include them in their briefs.  *See* Pennsylvania Rule of Appellate Procedure 2111(a)(3).  The "scope of review" and the "standard of review" have distinct and definitive definitions. Generally, standard of review defines "the depth or intensity with which trial court rulings of fact, law, and discretion are subjected to review.  Scope of review . . . defines the breadth of the review function."  Phillips, Jr., J., "The Appellate Review Function:  Scope of Review," 47 Law & Contemp. Probs. 2, 1 (Spring 1984).  Specifically in Pennsylvania:

evidentiary matters, the parties have incorrectly stated the issue before this Court.

Cruz cited our scope and standard of review in his brief but failed to appreciate their implication for his appellate issue and argument. He wrote:

> [t]he admissibility of evidence is a matter for the discretion of trial court, and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. **Commonwealth v. Sherwood**, 982 A.2d 483, 495 (Pa. 2009); **Commonwealth v. Malloy**, 856 A.2d 767, 775 (Pa. 2004). "An abuse of discretion is not merely an error of judgment, but the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will." **Commonwealth v. McGinnis**, 675 A.2d 1282, 1285 (Pa.Super. 1996) (quotation marks omitted).
>
> The scope of review is plenary.

Cruz's Brief at 4.

---

> "Scope of review" and "standard of review" are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. "Scope of review" refers to the confines within which an appellate court must conduct its examination. In other words, it refers to the *matters* (or "what") the appellate court is permitted to examine. In contrast, "standard of review" refers to the *manner* in which (or "how") that examination is conducted . . . we also referred to the standard of review as the "degree of scrutiny" that is to be applied.

**Morrison v. Commonwealth, Depart. of Pub. Welfare, Office of Mental Health (Woodville State Hosp.)**, 646 A.2d 565, 570 (Pa. 1994) (citations and some punctuation omitted).

Cruz is clearly correct as to our standard of review. Moreover, in light of the Supreme Court of Pennsylvania's recent holding in **Commonwealth v. Johnson**, 160 A.3d 127 (Pa. 2017), he also appears to be correct that our scope of review is plenary. We note that the Commonwealth does not disagree with his statement of the scope and standard of review and, therefore, "is satisfied with them." Pennsylvania Rule of Appellate Procedure 2112.

The **Johnson** Court, reviewing a ruling to admit Pa.R.E. 404(b) evidence of prior crimes, affirmed "for reasons other than those relied upon by the trial court." **Johnson**, 160 A.3d at 144. In so doing, the Justices said, "We may affirm a trial court's evidentiary ruling if we deem it to have been correct on grounds other than those specified by the court itself, particularly where the additional reason is apparent from the record." **Id.** at 144, n. 15 (**quoting Commonwealth v. Edwards**, 903 A.2d 1139, 1157 (Pa. 2006)). Thus, the Supreme Court of Pennsylvania used a plenary scope of review for Pa.R.E. 404(b) decisions, and so will we.[3]

Thus, in light of our expansive scope of review and deferential standard of review, the issue before this Court is: did the trial court misapply the law; was its judgment manifestly unreasonable, in light of all the evidence of

---

[3] Our scope of review for orders granting motions *in limine* is plenary, despite this Court's prior, contrary decisions, which **Commonwealth v. Johnson**, 160 A.3d 127 (Pa. 2017), constructively abrogated. **See, e.g., Commonwealth v. Stephens**, 74 A.3d 1034, 1037 (Pa. Super. 2013) (**quoting Commonwealth v. O'Brien**, 836 A.2d 966, 968 (Pa. Super. 2003) ("because the trial court indicated the reason for its decision . . . our scope of review is limited to an examination of the stated reasons."); **see also Commonwealth v. Weakley**, 972 A.2d 1182 (Pa. Super. 2009).

record; or was that judgment the result of bias, prejudice, or ill will? The issue is not – as Cruz and the Commonwealth suggest – the more exacting question of whether the trial court's judgment to permit the testimony was correct. Correct or incorrect judgment is the language of *de novo* review, which we do not use when reviewing evidentiary decisions.

Disregarding our deferential review of evidentiary rulings, Cruz opens the argument of his brief by claiming "The [trial c]ourt erred in granting the Commonwealth's motion *in limine* to introduce certain 'prior bad act' evidence under Pa.R.E. 404(b)." Cruz's Brief at 18. He then gives a scholarly dissertation on the various theories Pa.R.E. 404(b) evidence, which culminates with a discussion of **Commonwealth v. Hicks**, 156 A.3d 1114 (Pa. 2017). **See** Cruz's Brief at 19 – 31. After explaining that there is no clear majority in **Hicks**, he "acknowledges, however, that the Superior Court must decide the instant matter in accordance with the pre-**Hicks** jurisprudence . . . ." **Id.** at 31.

Cruz concludes his argument by retrying his original opposition to the Commonwealth's motion *in limine*, as if *de novo*. Critically, he never says how (or even that) the trial court misapprehended or misapplied Pa.R.E. 404(b);[4]

---

[4] Pennsylvania Rule of Evidence 404(b) dictates:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order

that the judgment reached was manifestly unreasonable; or that the trial judge demonstrated bias, prejudice, or ill will towards him. Ultimately, Cruz's only real contention is that "there is significantly less similarity between the remote crime and the current offense than there was in" **Commonwealth v. Aikens**, 990 A.2d 1181 (Pa. Super. 2010); **O'Brien**, **supra**; and **Commonwealth v. Luktisch**, 680 A.2d 877 (Pa. Super. 1996). Cruz's Brief at 36. However, he does not analyze the facts of those three cases or distinguish his situation from them.

The argument from the Commonwealth essentially restates the trial court's 1925(a) Opinion. See Commonwealth's Brief at 8 – 11.

The trial court opined that the testimony of Cruz's previous victim:

> was properly admitted to show [Cruz's] intent or method of operation (*i.e.* to establish a common scheme). The non-exclusive set of factors to consider includes the victims,

---

> to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404.

acts, location, and any relationship to the accused. ***Commonwealth v. O' Brien***, 836 A.2d 966 (Pa. Super. 2003). A trial court must look at the factual similarities between the two incidents in its entirety. Here, the introduction of this testimony was relevant to establish a common scheme, intent, plan or design and, thus, bolster the victim's testimony.

Applying the above-mentioned principles to the case at hand, we note the similarities between the two incidents. We first address the time period between the two incidents. The first incident occurred in roughly 1994 and the second incident occurred between the dates of September 2006 and September 2007. In ***Commonwealth v. Aikens***, 990 A .2d 1181 (Pa. Super. 2010), the Pennsylvania Superior Court reiterated that "remoteness is merely one factor to be considered in determining admissibility" of a proffer of prior[-]bad[-]acts evidence. ***Aikens***, 990 A.2d at 1186. However, "'while remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question.'" ***Id.*** at 1185 (***quoting Commonwealth v. Luktisch***, 680 A.2d 877, 879 (Pa. Super. 1996)). A time period of roughly ten years is not too remote a time period when taken into consideration with the similarities between the two incidents. Thus, we proceed to the similarities of the incidents.

Both incidents involved minor girls of Hispanic descent. At the time of the incident[s], [Cruz] was dating the victims' mothers and would often spend the night at the mother's place of residence. [Cruz] was in the same fatherly role to both victims. Both incidents occurred at the victims' mothers' homes. The incidents have the same *modus operandi*. Both victims testified that [Cruz] would sneak up on them, late at night while everyone was sleeping. Both victims were in a vulnerable position of sleeping along with everyone else. [Cruz] would have an alcohol odor about his person. [Cruz] would begin by kissing/licking both girls on the back of the neck and proceed to hold the girls' hands and stroke his penis. Finally, both girls testified that he would ejaculate. Based off the similar race, age, location, relationship to the victims, manner of sexual abuse, this

- 10 -

>    Court properly admitted the 404(b) evidence to show
>    [Cruz's] intent, method of operation, or common scheme.

Trial Court Opinion, 10/16/17, at 4 – 6.

Cruz disagrees with the trial judge's rationale for reaching the conclusion that his prior bad act of child molestation was substantially similar to events in this case. He points out that he only molested his prior victim once, near the end of his relationship with her mother, while he molested the current complainant repeatedly, from the very beginning of the relationship and over the course of several years.

This line of reasoning misses the trial judge's point for admitting the evidence. He allowed the previous victim's testimony to show a common, repeated, *modus operandi*. The *modus operandi* exception to Rule 404(b) does not speak to the frequency of the criminal conduct; its purpose is to show the manner in which the crime is carried out. As this Court has explained, the modus operandi expectation is to "show a common scheme or plan. Thus, the details of the crimes must be examined for shared similarities, *i.e.*, similarity of victims, location where the crimes occurred." **O'Brien**, *supra.* at 969. **See Commonwealth v. Newman**, 598 A.2d 275, 279 (Pa. 1991) (stating that a commonality of roles and location of crime establishes a common design and that the court must examine shared details); *see also Commonwealth v. Elliott*, 700 A.2d 1243, 1250 (Pa. 1997) (allowing testimony to show *modus operandi* from three prior assaults with sexual overtones, on three white

women in their twenties, in the early morning hours, when each woman found herself alone with defendant).

Nothing in **O'Brien**, **Newman**, or **Elliott** suggests that courts should concern themselves with how often the crime occurred. Such a difference has more to do with when opportunity presents itself to the criminal than it does with *modus operandi*. Rather, we consider the way in which one committed the various crimes to demonstrate a common *modus operandi*. Hence, the trial court rationally disregarded the difference in the number of assaults Cruz perpetrated upon his prior victim versus his current complainant.

Next, Cruz draws our attention to the age differences of the prior victim and the instant complainant. One girl was twelve-years-old at the time of the molestation; the other was between eight and eleven. Cruz attempts to make a nonexistent distinction between a "prepubescent" girl and a "possibly post-pubescent" one. Cruz's Brief at 37. We fail to see any distinction here, and, even if we did, it would not render the trial court's judgment manifestly unreasonable, because a twelve-year-old child has no greater capacity to consent to sexual activity than one at the ages of nine, ten, or eleven. In addition, the female body does not so greatly change from the age of ten or eleven to twelve to establish the different preferences for victims that Cruz's argument suggests. Hence, the trial judge's connection between the ages of the complainant and the prior victim was reasonable.

Finally, Cruz points out that he performed cunnilingus on his prior victim, but he never did so on the current complainant. He likewise argues that he

penetrated the complainant vaginally and attempted anal intercourse with her – two things Cruz did not do to his prior victim. This argument overlooks the many similarities in the manner in which he **did** gratify himself with both girls, which the trial court related in great detail in its 1925(a) Opinion. We see no reason to recite them again, but they are sufficient for us to conclude that the trial court's judgment of relevance to prove *modus operandi* was eminently reasonable.

Cruz ends his brief with the conclusory statement that "[a]ny minimal relevance of such evidence was outweighed by the undue prejudice occasioned by its admission." Cruz's Brief at 38. Cruz says no more on this and cites to no case law supporting his bald claim of prejudice.

In order for an argument to be cognizable on appeal it must contain "discussion and citation of authorities as are deemed pertinent." Pennsylvania Rule of Appellate Procedure 2119(a). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner v. Glosser**, 892 A.2d 21, 29–30 (Pa. Super. 2006). Because Cruz has failed to develop an argument to show that any prejudice from the admission of the 404(b) testimony outweighed its relevance, we find that he has waived his prejudice argument.

Thus, we conclude that, in light of the whole record, the trial court did not abuse its discretion in admitting the Commonwealth's 404(b) evidence.

Judgment of sentence affirmed.

Judge Olson concurs in result.

Judge Musmanno concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/17/2018