J-S22024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ARTHUR GEIER | : | |
| | : | |
| Appellant | : | No. 1488 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 2, 2016
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000885-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ARTHUR GEIER, JR. | : | |
| | : | |
| Appellant | : | No. 1489 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 2, 2016
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000412-2015

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED NOVEMBER 04, 2021**

Edward Arthur Geier, Jr. (Appellant) appeals, *nunc pro tunc*, from the judgments of sentence entered in the Centre County Court of Common Pleas following his jury convictions of a myriad of sexual offenses committed against two victims in these consolidated cases. On appeal, Appellant argues the trial

---

[*] Retired Senior Judge assigned to the Superior Court.

court erred when it consolidated the two criminal informations for trial, and when it permitted the Commonwealth to introduce evidence of his prior sexual assault conviction against a third victim as a prior bad act. For the reasons below, we affirm.

On March 26, 2015, the Commonwealth charged Appellant at Trial Docket No. CP-14-CR-0000412-2015 (Trial Docket No. 412-2015) with more than 1,000 offenses — including rape of a child, indecent assault of complainant less than 13 years of age, and unlawful contact with a minor[1] — relating to the sexual abuse of his minor stepdaughter, K.K.M.[2] The facts underlying this conviction were summarized by this Court in a prior appeal as follows:

> In August of 2014, state troopers found K.K.M., then thirteen years-old, walking along State Route 45 of Centre County, Pennsylvania.[1] K.K.M. had walked 4.7 miles from Spring Mills, where she resided, with two suitcases and a large handbag before she encountered the troopers. K.K.M. told the troopers that she was being sexually assaulted by her stepfather, Appellant.
>
> _____
>
> [1] K.K.M. was born in April of 2001.
>
> _____
>
> K.K.M. testified . . . that Appellant began touching her when she was approximately seven or eight years old.[2] Appellant would

_____

[1] *See* 18 Pa.C.S. §§ 3121(c), 3126(a)(7), 6318(a)(1).

[2] K.K.M.'s mother, D.G., was Appellant's second wife; she began dating Appellant when K.K.M was approximately two years old. *See* N.T., 1/19/16, at 367-68, 502. Appellant was previously married to T.G., with whom he shares a son, M.G. *See id.* at 367.

touch K.K.M.'s chest, vagina and would forcibly try to kiss her. She testified that Appellant would engage in these activities when her mother would go to bed, go downstairs to get a drink, or go to the bathroom. Appellant would at times take K.K.M.'s clothes off and touch her chest, touch her vagina, or insert his fingers into her vagina. The assaults progressed when K.K.M. grew older.

_____

[2] K.K.M. also estimated that the touching was ongoing for approximately five to six years at the time she ran away.

_____

On the first occasion Appellant had intercourse with K.K.M., he accosted her in the shower and told her that if she did not let him have sex with her, he would kill her. Appellant would put her hand on his penis and instruct the child, "not to hold it too tight, but kind of loose, and to move it up and down slowly." At other times Appellant would cover her face, forcing her to open her mouth and then inserting his penis into her mouth. Appellant would tell K.K.M. not to tell anyone because "[she] and [her] sisters would be taken away and [her] mom would be heartbroken and left with nothing and [they] would lose everything."

Sexual incidents would occur in her bedroom, the bathroom, the garage, cars, his room, and the couch. When Appellant and K.K.M. were riding in a car, Appellant would pull the car over, pull K.K.M. into the backseat and remove her clothing. Appellant would predicate K.K.M.'s participation in various activities by requiring she perform sex acts with him. K.K.M. testified that she tried repeatedly to deter Appellants advances by trying to fight him off or calling her mother, and she even told Appellant "no;" however, Appellant would continue to abuse her.

K.K.M. testified that the touching occurred two to three times per week. K.K.M was made to perform oral sex on Appellant approximately two times per week, and Appellant performed oral sex on the child approximately thirty times. She also testified that Appellant forced her to engage in intercourse approximately once or twice a week for three to four years, with the last incident occurring in her bedroom days before she ran away. Forensic analysis [later] corroborated K.K.M.'s account of the final incident, positively identifying Appellant's semen in the specific areas outlined by her.

*Commonwealth v. Geier*, 881 MDA 2016 (unpub. memo. at 1-3) (Pa. Super. Feb. 23, 2017) (record citations omitted), *appeal denied*, 141 MAL 2017 (Pa. Aug. 1, 2017).

Less than three months after the charges were filed at Trial Docket 412-2015, on June 18, 2015, the Commonwealth charged Appellant at Trial Docket No. CP-14-CR-0000885-2015 (Trial Docket No. 885-2015) with one count each of rape of an unconscious person, indecent assault,[3] and related crimes for the sexual assault of his half-sister, A.D.,[4] on two separate occasions — once when she was 14 years old, and a second time when she was 19 years old. The facts underlying those charges are as follows.

A.D., who was born in 1988, shares the same mother as Appellant. N.T., 1/19/16, at 409. She and Appellant were born 13 years apart. **See** Trial Docket 885-2015 Criminal Complaint, 5/28/15, at 1 (Appellant's date of birth is April of 1975). A.D. and her mother lived in Florida from the time she was six until she was 14 years old. N.T., 1/19/16, at 409-10. In 2003, they moved back to Pennsylvania, in part, to assist Appellant in caring for his son (M.G.) since he was in the process of divorcing his first wife. *Id.* at 410. She, her mother, and her grandmother lived in the same apartment building as Appellant. *Id.* at 411. That summer, before her 15th birthday, A.D. agreed

---

[3] **See** 18 Pa.C.S. §§ 3121(a)(3), 3126(a)(1).

[4] The victim's initials are now A.H.; A.D. reflects the victim's maiden name. N.T., 1/19/16, at 408-09. However, because the third victim's initials are also A.H., we refer to this victim as A.D.

to babysit M.G. for Appellant. *See id.* at 409, 417-18. She and M.G. fell asleep in Appellant's bed while watching cartoons. *Id.* at 421. She awoke to Appellant "raping" her. *Id.* at 422. A.D. testified that she "froze," and Appellant stopped when he "passed out." *Id.* at 423-24. She then "snuck out" and returned home. *Id.* at 424. A.D. confronted Appellant the next day, telling him he raped her. *Id.* at 426. Appellant stated that he had been drinking and he thought she was his girlfriend, D.G. (K.K.M.'s mother). *Id.*

A.D told her mother what Appellant had done, but her mother (also Appellant's mother) did not want her to report the incident to police. N.T., 1/19/16, at 429. A year later, A.D. disclosed the abuse to a school guidance counselor, who had her talk to the police. *Id.* at 430, 433. However, she later recanted after pressure from her mother. *Id.* at 434-35. A.D. explained that her family promised to protect her by never leaving her alone with Appellant. *Id.* at 435. Nevertheless, in 2007, when she was 19 years old, A.D. was once again alone with Appellant in her apartment. *Id.* at 438-39. At that time, he put his hand under her "shirt and . . . bra[,] grab[bed her] boobs," and said, "It's okay. You're only my half-sister." *Id.* at 439. A.D. immediately told her mother and uncle what happened, and Appellant attempted to apologize, stating "he was on pain medications and he . . . thought that they were making him do weird things[.]" *Id.* at 441.

A.D. did not report the abuse to the police until after attending a bail hearing in K.K.M.'s case. *See* N.T., 1/19/16, at 444. When she gave

Appellant a hug after the hearing, he stated, "Please don't testify against me."

*Id.* At that point, A.D. reported both prior assaults to the police.

On July 24, 2015, the Commonwealth filed a motion to consolidate the criminal informations at Trial Docket Nos. 412-2015 and 885-2015. Following a hearing on July 31st, the trial court granted the motion. *See* N.T., Consolidation H'rg, 7/31/15, at 12. On January 12, 2016, Appellant filed a motion in *limine*, seeking to preclude, *inter alia*, evidence of his prior record, which was not for *crimen falsi* crimes.[5] *See* Appellant's Motions in *Limine*, 1/12/16, at 3-4. The next day, the Commonwealth filed a comprehensive motion in *limine*. *See* Commonwealth's Motions in *Limine*, 1/13/16. Relevant to this appeal, the Commonwealth sought to introduce evidence, pursuant to Pa.R.E. 404(b)(1),[6] of Appellant's prior sexual assault of a third victim, which resulted in a guilty plea.[7] *See id.* at 12-19 (unpaginated). The trial court

---

[5] Appellant also sought to preclude opinion testimony concerning the victims' credibility and testimony suggesting that the victims' mental health struggles resulted from the alleged crimes committed by Appellant. *See* Appellant's Motions in *Limine* at 5-6.

[6] As will be discussed in detail *infra*, Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts to prove the defendant's character, and demonstrate that, at the time of the crime, he acted in accordance with that character. Pa.R.E. 404(b)(1). Nevertheless, evidence of a defendant's prior bad acts may be admissible for other purposes. Pa.R.E. 404(b)(2).

[7] The Commonwealth's motion also sought: (1) to preclude any mention of the grading or possible punishment for the crimes charges, Appellant's use of consent as a defense, and any evidence of the victims' prior sexual conduct; and (2) to amend the criminal information at Trial Docket 885-2015 to reflect
*(Footnote Continued Next Page)*

conducted a hearing on January 14, 2016. That same day, it entered an order granting both parties' motions in *limine* with respect to all issues except the admissibility of Appellant's prior bad acts.[8] The next day, the trial entered an order granting the Commonwealth's motion to permit evidence of Appellant's prior bad acts against a third victim.[9] *See* Order, 1/15/16.

The cases proceeded to a jury trial, commencing on January 18, 2016. In addition to the testimony of the victims detailed above, the Commonwealth also presented A.H., a third victim of Appellant's sexual abuse. A.H. testified that she is the younger cousin of Appellant's first wife, T.G. N.T., 1/19/16, at 473-74. A.H. explained that she was very close to T.G., whom she viewed as a sister or an aunt. *Id.* at 474, 476. In the summer of 2000, when A.H. was 13 years old,[10] she babysat Appellant and T.G.'s son, M.G. *Id.* at 478. At that time, Appellant and T.G. lived in Pleasant Gap. *Id.* at 480. A.H. testified that, on "multiple occasions [Appellant] would wrestle [her] and pretend like [they] were just joking around, and he would put his hands up [her] shirt and down [her] pants." *Id.* at 478. She stated that he also "sucked" her breast and "had his penis pop out of his boxers on one occasion" while they were

_____

the offenses occurred in the spring of 2003 and summer of 2007. *See* Commonwealth's Motions in *Limine* at 2-11.

[8] The order was docketed on January 18, 2016.

[9] The order also denied Appellant's motion to exclude his prior criminal record. Order, 1/15/16.

[10] A.H. was born in 1987. N.T., 1/19/16, at 473.

watching a movie. *Id.* at 479. The abuse continued when Appellant and T.G. moved to Bellefonte, where Appellant "physically pinned [her] on the couch." *Id.* at 480. A.H. eventually reported the abuse her parents, who contacted the police. *See id.* at 483-84. Appellant was later charged with, and pled guilty to, the sexual assault of A.H.[11] *Id.* at 484-85.

At the conclusion of A.H.'s testimony, the trial court provided the following limiting instruction to the jury:

> Before [A.H.] stands down, . . . I just need to make sure that I advise you of something; that you heard evidence tending to prove that [Appellant] is guilty of an offense for which he is not on trial here today, and I'm speaking of the testimony to the effect that [Appellant] was previously convicted, or in this case pled guilty, for indecent assault for acts perpetrated against [A.H.] This evidence is before you for a limited purpose, and that is for the purpose of tending to show [Appellant's] prior sexual assault of [A.H.] and the current charges which are part of a common scheme or a design or a plan and to show [Appellant's] actions were not the result of a mistake or an accident. This evidence must not be considered by you in any way other than for the purposes I've just stated. You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., 1/19/16, at 487-88.

---

[11] By way of stipulation, the Commonwealth presented evidence that on December 12, 2001, Appellant pled guilty, at two dockets, to charges of indecent assault, indecent exposure, endangering the welfare of a child, and corruption minors. *See* N.T. 1/19/16, at 491-92, Commonwealth's Exhibits 50, 52; 18 Pa.C.S. §§ 3126(a)(7), (8), 3127, 4304, 6301(a)(1). He was sentenced to an aggregate term of 4 to 23½ months' imprisonment followed by five years' probation. *See* Commonwealth's Exhibit, 52, 53.

Appellant testified in his own defense, and denied all allegations of abuse against A.D. *See* N.T., 1/19/16, at 518. With respect to K.K.M., Appellant testified that around the time she turned 11 years old, he became her "confidant." *Id.* at 504. At some point later, he "caught [her] doing things she shouldn't be doing" on her phone and laptop, although did not specify what those "things" were. *Id.* at 505. Appellant testified that, shortly after K.K.M. turned 13, he walked in on her "touching herself" in her bedroom. *Id.* at 506. He stated he left and went downstairs with no intention of "bringing it up[.]" *Id.* at 506-07. However, he claimed that about 10 minutes later, K.K.M. "came down[,] sat beside [him, and said] that [he] could have stayed or [he] didn't have to go." *Id.* at 507-08. Appellant testified that, after that, their "relationship became twisted" and he found himself "aroused by" K.K.M.'s behavior. *Id.* at 510. He acknowledged that he walked in on her several more times, and not always by accident. *See id.* at 510-11. After one instance, he stated he "masturbated in the living room" by himself. *Id.* at 511. Appellant further testified that on two occasions, he and K.K.M. both masturbated together in her bedroom. *Id.* at 512. He claimed that he "blew up at her" two days before she left the house when he found her "online with some guy." *Id.* at 512. He stated he told her "either she was going to have to go or [he] was" and that "she was the reason why [he] had to keep masturbating in her room[.]" *Id.*

On January 20, 2016, the jury returned a verdict of guilty on all 1,068 charges. On January 26th, the trial court ordered Appellant be evaluated by

the Sexual Offenders Assessment Board to determine if he met the criteria for classification as a sexually violent predator (SVP) under the Sexual Offenders Registration and Notification Act (SORNA).[12]

On May 2, 2016, the trial court sentenced Appellant, at both dockets, to an aggregate term of 75 to 150 years' imprisonment. It also determined Appellant met the criteria for classification as an SVP. **See** N.T., 5/2/16, at 27-28. Appellant filed timely appeals.

On February 23, 2017, a panel of this Court affirmed Appellant's judgments of sentence, concluding Appellant waived his challenge to the sufficiency of the evidence because his Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal were "too vague to warrant meaningful review." **Geier**, 881 MDA 2016 (unpub. memo at 7). Appellant's petition for *allocatur* review by the Pennsylvania Supreme Court was subsequently denied. **See Geier**, 141 MAL 2017.

Appellant's direct appeal rights were later reinstated *nunc pro tunc* by this Court after he sought relief in a timely post-conviction collateral petition. **See Commonwealth v. Geier**, 1185 MDA 2019 (unpub. memo. at 9-13) (Pa. Super. Aug. 21, 2020) (vacating order denying relief, and remanding for reinstatement of direct appeal rights). Upon remand, Appellant filed a notice

---

[12] **See** 42 Pa.C.S. §§ 9799.24, 9799.58.

of appeal at each trial court docket,[13] and complied with the trial court's directives to file Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[14]

Appellant raises the following two claims on appeal, which we have reordered for purposes of disposition:

I.     Whether the trial court erred in consolidating the two Criminal Informations for trial where the evidence relating to [each] case would not be admissible in the other case and is not capable of separation by the jury so there would be no danger of confusion[?]

II.    Whether the trial court erred in denying Appellant's motion in *limine* to preclude evidence regarding Appellant's prior criminal record at trial and permitting the Commonwealth to introduce prior bad act evidence regarding A.H. pursuant to Pa.R.[E.] 404(b)[?]

---

[13] *See Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018) (separate notices of appeal must be filed when a single order resolves issues arising on more than one trial court docket).

The appeal of Trial Docket No. 885 MDA 2015 is docketed at 1488 MDA 2020, and the appeal of Trial Docket No. 412-2015 is docketed at 1489 MDA 2020.

[14] We note that, Appellant initially filed the notices of appeal and Rule 1925(b) statements absent an order by the trial court reinstating his direct appeal rights. After being directed to do so by this Court, the trial court entered the requisite order on November 2, 2020. *See* Order, 11/2/20. Appellant then filed new notices of appeal and Rule 1925(b) statements.

Appellant's Brief at 4.[15]  While these issues are distinct, the analysis for both

claims overlaps.

Preliminarily, we note that we review both issues on appeal for an abuse

of discretion.

> "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant."

***Commonwealth v. Knoble***, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation

omitted).  Similarly:

> "Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."  "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."

***Commonwealth v. Tyson***, 119 A.3d 353, 357–58 (Pa. Super. 2015) (*en*

*banc*) (citations omitted).

Pennsylvania Rule of Criminal Procedure 582 permits offenses charged

in separate informations to be tried together if, *inter alia*, "the evidence of

each of the offenses would be admissible in a separate trial for the other and

is capable of separation by the jury so that there is no danger of confusion[.]"

---

[15] Appellant raised a third claim in his Rule 1925(b) statement — asserting the trial court erred in denying his request to remove a juror — which he withdrew on appeal.  ***See*** Appellant's Brief at 4 n.1.

Pa.R.Crim.P. 582(A)(1)(a).[16]   When seeking to consolidate separate cases, "the Commonwealth is required to show more than that the crimes are of the same class." ***Commonwealth v. Newman***, 598 A.2d 275, 278 (Pa. 1991). Rather, there must be "shared similarities in the details of each crime." ***Id.*** This Court has looked to Pennsylvania Rule of Evidence 404(b) for guidance. ***See Commonwealth v. Smith***, 47 A.3d 862, 867 (Pa. Super. 2012) (considering Rule 404(b) analysis when determining whether evidence in one case would be admissible in another for purposes of consolidation of separate informations).

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). ***See Newman***, 598 A.2d at 399 ("[E]vidence of a distinct crime is inadmissible to show a defendant's propensity to commit a crime."). However, the Rule further provides that evidence of defendant's prior bad acts may be admissible when it is introduced for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). When bad acts evidence is proposed for such other purpose in a criminal case, it "is admissible only if

---

[16] Subsection (A)(1)(b) of the Rule also permits cases to be tried together if "the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1)(b). That subsection is not applicable under the facts presented *sub judice*.

the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* Thus, in determining whether a trial court properly consolidated separate cases for trial, this Court has considered whether the evidence in each case would be admissible in other pursuant to one of the Rule 404(b)(2) exceptions. *See Commonwealth v. Lively*, 231 A.3d 1003, 1006 (Pa. Super. 2020); *Smith*, 47 A.3d at 867.

Here, the trial court concluded the evidence of each case would be admissible in the other under the common plan or exception. *See* Trial Ct. Op., 2/3/20, at 4-5. When determining the applicability of that exception,

> the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.
>
> Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. G.D.M.*, 926 A.2d 984, 987 (Pa. Super. 2007) (paragraph break added and citation omitted).

With regard to the consolidation of his cases for trial, Appellant argues the trial court abused its discretion for two reasons: (1) the evidence in each case would **not** be admissible in a separate trial for the other; and (2) the evidence "would be confusing to the jury." Appellant's Brief at 19. First, he insists that the evidence of his alleged assault of A.D. "would not have been admissible under Rule 404(b) in the case involving [K.K.M.]" or vice versa.[17] *Id.* at 20. Appellant explains that the alleged incident involving A.D. occurred in 2003, when she was 14 years old — "Appellant came home drunk one night, while A.D. was sleeping, and crawled into bed with her and raped her."[18] *Id.* at 20-21. However, the alleged abuse of K.K.M. occurred over a course of four years, beginning in 2010 — when she was eight years old — and continuing until 2014, and involved both the touching of her intimate parts as well as "forcible rape." *Id.* at 21. Appellant emphasizes that "[a]t no time was there an allegation that [he] was drunk for any of the incidents involving" K.K.M. *Id.* Thus, he maintains the alleged abuse of each victim was not "so nearly identical in method as to earmark them as the handiwork of the

---

[17] This argument tracks Appellant's additional claim that the evidence concerning his prior abuse of A.H. should not have been admitted under the "common plan, scheme or design" exception to Rule 404(b)'s prohibition of evidence concerning a defendant's prior bad acts. *See* Appellant's Brief at 20.

[18] He acknowledges there was a second alleged incident that involved him grabbing her breast under her shirt. Appellant's Brief at 20.

accused." *Id.*, *citing* **Commonwealth v. Ross**, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*).

Second, Appellant maintains the evidence was not capable of separation by the jury so as to avoid confusion. Appellant's Brief at 21. He asserts the younger witness (K.K.M.) testified regarding a broader range of conduct, which occurred after the incidents involving the older witness (A.D.). *Id.* at 22. Furthermore, Appellant emphasizes that the incidents involving A.D., which occurred first in time, were charged after the case involving K.K.M. **See id.** Thus, he contends, "[r]eferences to the 'first case' and 'second case' or 'older case' and 'newer case' would be substantially likely during trial and all such terms could plausibly refer to either matter." **Id.** Accordingly, Appellant argues the trial court abused its discretion when it consolidated these two cases for trial.

In granting the Commonwealth's motion to consolidate the two cases, the trial court opined:

> Here, evidence from one case would be admissible in a separate trial for the other due to the similarities between the cases. [B]oth victims had a familial relationship with Appellant, were of similar ages, and were assaulted within Appellant's home. Appellant argued the fact the alleged incident with A.D. occurred once indicates it was not similar to the alleged recurring assaults on K.[K.]M. This [c]ourt, however, found A.D. immediately informing her mother of the assault to be the intervening factor that prevented the assault from recurring.
>
> The [c]ourt found consolidation could be done without confusion of the jury because the testimony was straightforward. Additionally, the court found that because K.[K.]M. was now a

teenager and A.D. was now an adult, they would be able to provide clear testimony and resolve any potential confusion.

Lastly, the court did not find consolidation to unfairly prejudice Appellant. [E]vidence is not prejudicial merely because it is harmful to . . . Appellant's case. To be unfairly prejudicial, it must be "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Here, the [c]ourt did not find consolidation to unfairly prejudice . . . Appellant. . . .

Trial Ct. Op. at 4-5 (paragraph breaks added and citations omitted).

Upon our review of the record and relevant statutory and case law, we conclude the trial court did not abuse its discretion in granting the Commonwealth's motion to consolidate the cases for trial. First, we agree the evidence of each case would be admissible in a trial for the other. In both instances, Appellant sexually assaulted a minor female, with whom he shared a familial relationship, in his home — K.K.M. was his stepdaughter, and A.D. was his half-sister. Appellant raped A.D. when she was 14 years old, and began sexually assaulting K.K.M. when she was eight years old, continuing until she was 13 years old. Although there is a slight difference in the ages of the victims at the time they were abused, we note that A.D. had just moved to Pennsylvania four months before the assault; thus, Appellant had no opportunity to abuse her before that time. *See* N.T., 1/19/16, at 418. Moreover, while Appellant raped A.D. only once, A.D. immediately told her mother and uncle what had happened. ***See id.*** at 428-29, 450. Although her mother did not want her to report the incident to police, A.D.'s uncle confronted Appellant — directing him to "to stay away from her" — and her

family promised to protect her from him. N.T., 1/19/16, at 435, 452. Conversely, Appellant's abuse of K.K.M. only ceased when she was 13 years old because she left the home. *See* N.T., 1/18/16, at 133-34 (K.K.M. explaining she "just decided [she] had enough").

Appellant makes much of the fact that he was "drunk" when he allegedly raped A.D., but there was no allegation that he was drunk "for any of the incidents involving" K.K.M. Appellant's Brief at 21. We note, however, that the only indication that Appellant was "drunk" when he assaulted A.D. was his own statement to her the next day. *See* N.T., 1/19/16, at 426 (when A.D. confronted Appellant about the rape, he told her "he had been drinking[,] had three Red Deaths that night[, and] he thought [she] was" his girlfriend). When asked whether she could tell if he had been drinking, A.D. replied: "I couldn't smell any alcohol on him. I didn't turn to face him or anything." *Id.* at 425. Thus, we conclude the "drunk" distinction is of no moment.

Furthermore, Appellant ignores the fact that A.D. decided to proceed with the prosecution of Appellant only **after** attending his bail hearing on the charges involving K.K.M. *See* N.T., 1/19/16, at 444. Despite the fact that he raped and groped her when she was a teenager, A.D. testified that she still "felt bad for him" when he was charged with the abuse of K.K.M. *Id.* She explained:

> I gave him a hug, kind of to offer comfort, . . . and I told him, you know, "Everything is going to be okay. No matter what happens, everything is going to be okay," and he asked me as we were hugging . . . "Please don't testify against me."

*Id.* Shortly thereafter, A.D. contacted the police, who filed the charges in her case less than three months later. Thus, we conclude the evidence of K.K.M.'s case would be admissible in A.D.'s case to explain why A.D. decided to proceed with the prosecution of Appellant 12 years after the rape occurred. *See Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988) (evidence of a defendant's other crimes may be admissible "where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts").

We also conclude the trial court did not abuse its discretion when it found the evidence was capable of separation by the jury. Our review of the testimony of both victims confirms that they were each able to communicate to the jury the sexual abuse Appellant inflicted upon them. Moreover, Appellant's concern that reference to the "first" and "second" case, or the "older" and "newer" case, might confuse the jury never materialized at trial. *See* Appellant's Brief at 22. In fact, Appellant fails to provide any citation to the record where either the Commonwealth or the trial court referred to the cases in this manner. Indeed, our review of the Commonwealth's opening and closing statements reveals it referred to each case by the victim's name. *See* N.T., 1/18/16, at 43-67 (Commonwealth's opening statement; noting "[t]hey are separate cases, and [it has] no doubt [the jury will] be able to judge them separately"); N.T., 1/19/19, at 610-39 (Commonwealth's closing statement). Thus, Appellant's first issue fails. *See Commonwealth v. Andrulewicz*, 911 A.2d 162, 168-69 (Pa. Super. 2006) (court did not abuse its discretion in

- 19 -

consolidating three cases involving defendant's sexual abuse of minor female, ages 10, 12, and 16; incidents occurred in same residence, defendant initiated contact one of two ways — games or pornography — and jury was capable of separating evidence).

Next, Appellant contends the trial court abused its discretion when it permitted the Commonwealth to introduce evidence of his prior sexual assault of A.H. Appellant's Brief at 13. He insists that the incidents involving A.D. and K.K.M. were "not substantially similar to the prior bad acts evidence regarding A.H." *Id.* at 16-17. Appellant emphasizes that A.D. claimed Appellant forcibly raped her on one occasion and "felt her breasts" on another occasion, while K.K.M. alleged Appellant sexually assaulted her "hundreds [of times] over the course of several years[.]" *Id.* at 17. He contrasts this with the prior assault, where he was accused of putting his hands down A.H.'s shirt and pants "on a couple occasions" while she babysat his son. *Id.* at 16. Appellant insists the incidents "with these three victims were similar only in the sense that they're allegations of criminal sexual behavior, by [A]ppellant, in his home, against young females." *Id.* at 17. He argues the relationships of the victims to him, the ages of the victims at the time of the assaults, the acts alleged, and the number of incidents alleged were all different. *See id.* at 17. Accordingly, Appellant asserts the evidence of his prior crime "fell [so] far short of being 'so distinctive' and 'nearly identical' to the acts for which [he] was on trial" that the testimony of A.H. was not "relevant or probative,

and in fact, [was] unduly prejudicial." ***Id.*** at 18. Thus, he maintains he is entitled to a new trial.

As detailed above, "[e]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Tyson***, 119 A3d at 358 (citation omitted). ***See also*** Pa.R.E. 404(b)(1). However, such evidence may be admissible for some other purpose such as demonstrating the defendant had a common plan or scheme. ***See*** Pa.R.E. 404(b)(2); ***G.D.M.***, 926 A.2d at 987. When considering this exception, a reviewing court should consider factors such as "the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed[,]" as well as examine the crimes for "shared similarities, *i.e.*, similarity of victims[ and] location where the crimes occurred." ***See Commonwealth v. Rush***, 646 A.2d 557, 561 (Pa. 1994); ***Commonwealth v. O'Brien***, 836 A.2d 966, 969 (Pa. Super. 2003). Further, "while remoteness in time is a factor to be considered . . . the importance of the time period is inversely proportional to the similarity of the crimes in question." ***Commonwealth v. Aikens***, 990 A.2d 1181, 1185 (Pa. Super. 2010) (citation omitted).

Here, the trial court found the evidence of Appellant's prior conviction for his sexual assault of A.H. was admissible in the instant consolidated trial under the common plan or scheme exception to Rule 404(b). The court opined:

All of Appellant's victims were minors of a similar age who had either a familial or quasi-familial relationship with Appellant. The victim of Appellant's 2001 assaults, A.H., was the thirteen (13) year old cousin of Appellant's then wife who viewed Appellant as an uncle. In the present case, victim A.D. was [the] fourteen (14) year old half-sister of Appellant and victim K.[K.]M. was [the] step-daughter of Appellant [and] was eight (8) years old when the assaults began. The place of the assaults and the nature of the assaults were all similar. The 2001 assaults of A.H. occurred in Appellant's home while A.H. was babysitting Appellant's son and involved Appellant pinning A.H. down while groping and licking her breasts and vagina. The assault of A.D. occurred in Appellant's home while A.D. was babysitting Appellant's son and involved A.D. being awoken to Appellant raping her. The assaults of K[K.]M. occurred in the home of Appellant as well as Appellant's vehicle and involved the groping and licking of K.[K.]M.'s breasts and vagina and the raping of K.[K.]M. Appellant asked each victim not to tell on him. The [c]ourt found the time between the cases not at issue because Appellant was on parole for his 2001 assaults against A.H. and was not released from supervision until 2009, which is when Appellant began assaulting K.[K.]M.

[Additionally, the trial court] did not find the evidence of Appellant's prior bad act to be unduly prejudicial. Appellant argued admission of the act would be "extremely prejudicial, not overly probative" and would tell the jury that because Appellant had done this once, he did it again. . . . Given the similarities in the cases, the [c]ourt did not find Appellant's prior bad acts to be unfairly prejudicial. Instead the [c]ourt found the evidence of the prior assaults toward A.H. in conjunction with the assaults of A.D. and K[K.]M. established Appellant's actions were not the result of mistake or accident and instead evidenced a pattern of behavior or common scheme by Appellant. . . .

Trial Ct. Op. at 2-3.

Again, we conclude the trial court's ruling does not constitute a clear abuse of discretion. *See Tyson*, 119 A.3d at 357. All three victims shared a familial or quasi-familial relationship with Appellant — A.H. was his former wife's cousin, A.D. is his half-sister, and K.K.M. was his stepdaughter. Each victim was between the ages of 8 and 14 when the abuse began. Appellant

- 22 -

sexually assaulted two of the victims — A.H. and A.D. — while they babysat his young son. Appellant sexually assaulted A.H. in the summer of 2000, and pled guilty to those offenses in 2001. He then raped A.D. in the summer of 2003, less than four months after she moved to Pennsylvania, and while he was on parole for the crimes committed against A.H. Indeed, Appellant was on probation for his crimes against A.H. until 2009 — the same year he began sexually assaulting K.K.M.

Although the sexual abuse of K.K.M. continued for several years, we note the abuse of A.H. and A.D. stopped when they reported the incidents to their mothers. Further, unlike A.H. and A.D., K.K.M. lived with Appellant. Lastly, Appellant told both A.H. and K.K.M. not to tell anyone about the abuse; he similarly asked A.D. not to testify against him. Thus, we agree the facts of Appellant's prior assault of A.H. are sufficiently similar to those of the present cases to permit evidence of the prior conviction under the common plan and scheme exception. *See Aikens*, 990 A.2d at 1182-83, 1185-86 (in case involving indecent assault of minor daughter, trial court properly admitted evidence that defendant raped another daughter 15 years earlier; victims were almost same age at the time of the abuse, incidents occurred during overnight visits with defendant after he showed them pornographic videos, and although second victim stopped defendant from undressing her, he "mimicked the grinding movements of sexual intercourse on [her] in order to sexually gratify himself"); *Commonwealth v. Lukitsch*, 680 A.2d 877, 878-79 (Pa. Super. 1996) (in case involving sexual abuse of minor

stepdaughter, trial court properly permitted evidence that defendant sexually abused his own daughter 14 years earlier, and another stepdaughter 8 years earlier; all three victims had relationship with defendant, were all living with him at the time of assaults, and began with "improper touching . . ., then oral sex, then sexual intercourse").

We note that in arguing the evidence of his prior case should not have been admitted, Appellant emphasizes the language in *Ross* that "[t]he prior bad acts must be 'so nearly identical in method as to earmark them as the handiwork of the accused.'" Appellant's Brief at 14, *quoting* **Ross**, 57 A.3d at 102. However, we conclude the facts of that case are distinguishable. In **Ross**, unlike in the present case, the **identity** of the assailant was at issue. There, the murder victim's partially-clothed body was discovered near a boat launch; her anus and vagina had been "massively traumatized." **Ross**, 57 A.3d at 87-88. The defendant was identified as a suspect because he met the victim at bar the night before she was murdered, and was dropped off with her near the boat launch early that morning. **See id.** at 88. At trial, the Commonwealth was permitted to introduce the testimony of three of the defendant's ex-girlfriends, who each testified he sexually and physically abused her during their relationship. **See id.** at 99-100.

In concluding the testimony should not have been admitted to prove the defendant's **identity** as the victim's killer, the *en banc* panel explained that the defendant's abusive behavior in each prior incident was triggered by different causes. **See Ross**, 57 A.3d at 102. Moreover, the attack on the

murder victim "involved a level of **brutality** far in excess of the incidents of physical and/or sexual abuse described by" his ex-girlfriends. *Id.* at 103. Most significant, however, was that the fact that the prior incidents all involved claims of domestic abuse by a girlfriend which whom he was cohabitating. *See id.* There was no evidence that the defendant and the murder victim knew each other before the night in question. *Id.* Thus, the *en banc* panel opined that the testimony of the defendant's ex-girlfriends "did not establish any particular *modus operandi* or other pattern of conduct . . . so unusual and distinct as to constitute a 'signature' **identifying**" the defendant as the victim's killer. *Id.* (emphasis added).

Here, the identity of the abuser was not at issue. Each victim had a personal, familial or quasi-familial relationship with Appellant before the sexual abuse occurred, and each victim identified Appellant as her abuser. Thus, the facts in **Ross** are distinguishable from those before us.

Furthermore, we conclude Appellant has failed to demonstrate why the introduction of the prior bad acts evidence was unfairly prejudicial. This Court has explained:

> [T]he term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

*Commonwealth v. Gilliam*, 249 A.3d 257, 272 (Pa. Super. 2021) (citation omitted). Nevertheless, it is well-settled:

> The court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those

facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged[.]

*Lark*, 543 A.2d at 501.

Here, Appellant simply argues that "the prior bad acts regarding A.H. were not relevant or probative, and in fact, were prejudicial when introduced in the context of a trial on the consolidated Criminal Informations for the incidents with A.D. and K.[K.]M." Appellant's Brief at 18. He fails to provide any analysis concerning why the court's ruling resulted in "unfair prejudice" such that the jury did not weigh the evidence impartially. *See Gilliam*, 249 A.3d at 272.

Moreover, it is well-settled that:

[W]hen examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. . . . Jurors are presumed to follow the trial court's instructions. . . .

*Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). In the present case, immediately after A.H.'s testimony, the trial court issued an instruction, informing the jury that it was not to view the evidence "as showing that [Appellant] is a person of bad character or criminal tendencies" but, instead, for the limited purpose of demonstrating that Appellant's "prior sexual assault of A.H. and the current charges . . . are part of a common scheme or a design or a plan and to show [Appellant's] actions were not the result of a mistake or an accident." N.T., 1/19/16, at 487-88. The trial court repeated that

instruction during its final charge to the jury.[19]  **See** N.T., 1/20/16, at 674.

The jury was presumed to have followed these instructions, and Appellant

makes no argument to the contrary.  **See Hairston**, 84 A.3d at 666.  Thus,

we conclude Appellant has failed to demonstrate the trial court abused its

discretion when it permitted the Commonwealth to introduce evidence

regarding his prior sexual assault of A.H.

Because neither of Appellant's claims on appeal warrant relief, we affirm

the judgments of sentence.

Judgments of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/04/2021

_____

[19] The Commonwealth repeated this sentiment in its closing argument.  **See** N.T., 1/19/16, at 616-17 (stating it "did not introduce [A.H.'s] case so [the jury] would use that to find [Appellant] guilty of [K.K.M.] and [A.D.'s] case[;]" "[w]hat you can look at is the similarities between his behavior, in essence, a pattern, common scheme.").