J-S04014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AALYIAH WHEELER-COATES | : | |
| | : | |
| Appellant | : | No. 198 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009903-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AALYIAH WHEELER-COATES | : | |
| | : | |
| Appellant | : | No. 199 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009904-2017

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 11, 2022**

Appellant, Aalyiah Wheeler-Coates, appeals from the judgment of sentence of 10 to 20 years' incarceration, followed by 10 years' probation, imposed after a jury convicted her, in two separate but consolidated cases, of

---

[*] Former Justice specially assigned to the Superior Court.

committing various sexual offenses against two minor victims. After careful review, we affirm.

We adopt the trial court's detailed recitation of the facts established at Appellant's jury trial. *See* Trial Court Opinion (TCO), 4/29/21, at 2-5. Briefly, Appellant committed sexual offenses against her two minor nephews, B.K. and E.K., beginning when the boys were approximately four and five years' old. Following a consolidated jury trial at which both victims testified, Appellant was convicted, at docket number CP-51-CR-0009903-2017, of endangering the welfare of a child (EWOC) (18 Pa.C.S. § 4304(a)(1)), corruption of a minor (COM) (18 Pa.C.S. § 6301(a)(1)(ii)), indecent assault of a person less than 13 years of age (18 Pa.C.S. § 3126(a)(7)), and unlawful contact with a minor (UCM) (18 Pa.C.S. § 6318(a)(1)). At docket number CP-51-CR-0009904-2017, she was convicted of incest (18 Pa.C.S. § 4302(a)), involuntary deviate sexual intercourse with a child (18 Pa.C.S. § 3123(b)), indecent assault of a person less than 13 years of age, EWOC, COM, and UCM.

Following Appellant's conviction, the court originally sentenced her to an aggregate term of 16½ to 33 years' incarceration. However, after Appellant filed a motion for resentencing, as well as a motion for a new trial based on a challenge to the weight of the evidence, the court vacated her original sentence and resentenced her, on January 12, 2021, to a term of 10 to 20 years' incarceration, followed by 10 years' probation. Appellant filed timely notices of appeal at each docket number, which this Court consolidated on February 26, 2021. The trial court ordered Appellant to file a Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal, and she timely complied. The court filed its Rule 1925(a) opinion on April 29, 2021.

Herein, Appellant states two issues for our review:

1. Did the trial court abuse its discretion in denying … Appellant's motion to sever the charges and trials of B.K. and E.K. where … Appellant's right[s] to a fair trial and due process of law under the Pennsylvania and U.S. Constitutions were violated in that: (1) … Appellant was prejudiced by the jury['s] hearing testimony from two alleged victims where the jury inferred a propensity to commit crime on behalf of … Appellant; and (2) … Appellant was prejudiced in that the evidence of criminal conduct would not be admissible in the other case of criminal conduct since neither modus operandi were sufficiently similar?

2. Did the trial court abuse its discretion when denying … Appellant's post-sentence motion challenging the weight of the evidence where the verdict was so contrary to the evidence presented at trial as to "shock one's sense of justice" in that no credible evidence was presented that … Appellant inappropriately or sexually touched B.K. or E.K. for the following reasons: (1) both B.K.'s and E.K.'s trial testimony was inconsistent with the interviews they gave to the police and on video to the Philadelphia Children's Alliance; (2) both B.K. and E.K. could not remember dates or months when the alleged incidents took place; (3) both B.K. and E.K. could not exactly [state] where the alleged incidents took place; (4) both B.K. and E.K. testified that they had told family member[s] about the abuse[,] but the family members denied that at trial; and (5) … Appellant enjoyed a reputation of good character[?]

Appellant's Brief at 2-3 (unnecessary capitalization omitted).

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Timika R. Lane of the Court of Common Pleas of Philadelphia County. We conclude that Judge Lane's comprehensive opinion accurately disposes of the issues presented by

Appellant.  Accordingly, we adopt Judge Lane's opinion as our own and affirm

Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2022

FILED

APR 2 9 2021

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA  :
                                          :     CP-51-CR-0009903-2017
v.                                        :     CP-51-CR-0009904-2017
                                          :
AALYIAH WHEELER-COATES         :     198 EDA 2021
                                          :     199 EDA 2021

## OPINION

Lane, J.                                               April 29, 2021

### PROCEDURAL HISTORY

On January 10, 2020, a jury found Aalyiah Wheeler-Coates (hereinafter "Appellant") guilty on information CP-51-CR-0009903-2017 of Endangering the Welfare of a Child, pursuant to 18 Pa.C.S.A § 4304; Corruption of a Minor, pursuant to 18 Pa.C.S.A. § 6301; Indecent Assault, pursuant to 18 Pa.C.S.A. § 3126; and Unlawful Contact with a Minor, pursuant to 18 Pa.C.S.A. § 6318. Appellant was also found guilty on information CP-51-CR-0009904-2017 of Incest, pursuant to 18 Pa.C.S.A. § 4302; Endangering the Welfare of a Child, pursuant to 18 Pa.C.S.A. § 4304; Corruption of a Minor, pursuant to 18 Pa.C.S.A. § 6301; Indecent Assault of a Child, pursuant to 18 Pa.C.S.A. § 3126; Involuntary Deviate Sexual Intercourse ("IDSI"), pursuant to 18 Pa.C.S.A. § 3123; Unlawful Contact with a Minor, pursuant to 18 Pa.C.S.A. § 6318; and Unlawful Contact with a Minor for purpose of IDSI, pursuant to 18 Pa.C.S.A. § 6318.

On January 27, 2020, this court sentenced Appellant to an aggregate term of sixteen and one half to thirty-three years' incarceration, followed by thirty-two years of reporting sex offender probation. Appellant filed a post sentence motion on September 21, 2020, requesting a correction and reduction of sentence. Additionally, Appellant requested a new trial arguing that the verdict

Wheeler-Coates 1

was against the weight of the evidence. See Post Sentence Motion at 3 (unpaginated). Following a hearing on January 12, 2021, this court reduced Appellant's sentence to an aggregate term of ten to twenty years' incarceration, followed by ten years of reporting sex offender probation. Appellant's request for a new trial was denied.

Appellant filed a timely Notice of Appeal on January 12, 2021. Thereafter, this court ordered Appellant to file a Statement of Errors Complained of on Appeal,[1] which he promptly filed on February 7, 2021, raising the following issues for direct review:

1. The trial court erred in denying counsel's Motion to Sever and the Defendant was denied a fair trial and due process of law in violation of the Pennyslvania and U.S. Constitutions: (a) the Defendant was prejudiced in that the violence of criminal conduct would not be admissible in the other case of criminal conduct since neither *modus operandi* were sufficiently similar; and (b) the Defendant was prejudiced by the jury hearing about two victims where the jury could infer a propensity to commit crime on behalf of the Defendant.

2. The guilty verdict was against the weight of the evidence in that it was so contrary to the evidence presented at trial as to "shock one's sense of justice" as no credible evidence was presented at trial. The victims gave inconsistent testimony and were unable to recall dates, months or locations of abuse

**FACTS**

Between 2013 to 2015, the victims B.K., E.K., and their mother, Brinelle Wheeler-Coates (hereinafter "Brinelle"), moved back and forth between the homes of Rochelle Dargan, the complainants' maternal great grandmother, and Denise Harris (hereinafter "Aunt Nise").[2] Brinelle testified that between 2013 and 2014, she and the complainants lived exclusively with Rochelle Dargan. N.T. 1/8/2020 at 175. The family then moved into Aunt Nise's home for an uncertain amount of time in 2014 before the three moved back into Rochelle Dargan's home. Id. at 174.

---

[1] Pursuant to Pa.R.A.P. 1925(b).
[2] Denise Harris is Appellant's godmother and a family friend, but she is not a biological relative to the complainants. N.T. 1/18/20 at 174. Throughout their testimony, the victims refer to Denise Harris as "Aunt Nise."

Appellant testified that from 2010 to 2015, she periodically lived with and/or slept overnight at the homes of Rochelle Dargan and Aunt Nise. N.T. 1/9/20 at 99-100. Appellant acknowledged that while she stayed the night at either location there were times when Brinelle and the complainants were also living in the same home. Id. at 100.

### Complainant B.K., CP-51-CR-0009903-2017

On January 8, 2020, B.K. testified that on four or five occasions his maternal aunt, Appellant, sexually assaulted him in Aunt Nise's home.[3] N.T. 1/8/20 at 147, 151. B.K. recalled that on one occasion, Appellant laid him down on the bed, straddled him wearing only her bra and panties, and "humped" him. N.T. 1/8/21 at 147. Appellant promised that if he did not report the assault, she would take him to the store. Id. B.K. testified that on a separate occasion, Appellant took B.K. upstairs into her bedroom, instructed him to remove his shirt, and laid him on the bed. Id. at 148. Appellant removed her bra, thereby exposing her bare breasts, climbed on top of him, and continuously rubbed her vagina against his penis. Id. This instance occurred while B.K.'s mother, younger brother E.K., and grandmother were downstairs watching television. Id.

Before disclosing the abuse to an adult, B.K. first told his younger brother, E.K. Id. at 155. At that time, E.K. also disclosed that he experienced abuse from Appellant. Id. On one occasion B.K. witnessed his little brother's sexual abuse, recalling Appellant on top E.K., "humping him," as B.K. watched through a partially open door. Id. at 157. B.K. testified that he saw Appellant doing "the same thing to him that she did to me." Id. The encounter made him "sad . . . because [he] didn't want it to happen to him." Id. at 158.

---

[3] B.K. was approximately five years old when the abuse began.

## Complainant E.K., CP-51-CR-0009904-2017

On January 8, 2020, E.K. testified that Appellant sexually assaulted him on three occasions.[4] N.T. 1/8/21 at 42. On one occasion while he lived with Aunt Nise, Appellant called him away from watching television, directed him into her room bedroom, locked the door, and removed her clothes with exception of her bra and panties. Id. at 44-46. Appellant climbed on top of E.K. and rubbed her vagina against his penis. Id. at 47. E.K. testified that on another occasion, when he lived with his great-grandmother, Appellant pulled E.K. into a room, locked the door, and undressed herself, fully exposing her naked body. Id. at 65. Appellant kissed E.K. using her tongue, which E.K. described as "nasty and gross." Id. at 66. Appellant then removed E.K.'s pants and shirt exposing his bare chest. Id. at 69-70. Appellant then dressed herself in lingerie which left her genitals, breasts, and legs largely exposed. Id. at 71-72. While E.K. was on his back, Appellant climbed on top of him and continuously rubbed her vagina against his penis. Id. at 74. After humping E.K., Appellant took off the lingerie and exposed her buttocks. Id. at 73. Appellant made E.K. kiss her naked buttocks by standing in front of him, rear facing, and grabbing his head from behind her body to press it against her buttocks. Id. at 75. E.K. stated that as he found his clothes to leave, Appellant instructed him to not tell anyone. Id. at 77.

On the third and final occasion, Appellant's behavior grew more violative. E.K. testified that once in his great-grandmother's home, Appellant took him into a room and started to remove his clothing. Id. at 89- 90. Appellant laid E.K. on the bed and performed oral sex on him. Id. at 91. Afterward, Appellant laid on her back, put her legs in the air, and instructed E.K. to come closer

---

[4] E.K. was four or five years old when the abuse began.

and lick her vagina. Id. at 95-96. When E.K. refused, Appellant wrapped her legs around him, grabbed his head with her arms, and pushed his face onto her vagina. Id. at 96-97.

On August 12, 2017 the children disclosed the abuse to their mother who subsequently took the children to the Philadelphia Special Victim's Unit. Appellant was arrested and charged on September 29, 2017.

## DISCUSSION

### I. JOINDER OF COMPLAINTS

Appellant avers that the trial court erred in denying the defense's pretrial motion to sever the two separate informations because (a) the criminal conduct of one case would not be admissible in the other, as the *modus operandi*[5] were not similar, and (b) Appellant was prejudiced by consolidation because the jury could infer Appellant's propensity to commit crime. On February 7, 2019, this court heard oral argument regarding Appellant's motion. It was represented to this court that an agreement of consolidation was made between prior defendant counsel and prior Assistant District Attorney. N.T. 1/7/20 at 6. This agreement resulted in the Commonwealth's failure to file a formal response to Appellant's Motion to Sever. Id. Despite this, the Commonwealth put forth a compelling argument before this court. This court agreed that the facts alleged under each docket were sufficiently similar to warrant consolidation and Appellant faced no undue prejudice. Thus, Appellant's motion was denied.

The Supreme Court has established that whether to join or sever offenses for trial is within the sole discretion of the trial court. Commonwealth v. Wholaver, 989 A.2d 883,898 (Pa. 2010).

---

[5] "*Modus Operandi*" is incorrectly stated as an employed exception in this matter. Neither the Commonwealth in support of consolidation nor this court in exercising its discretion relied on the *modus operandi* exception, as it would be an inappropriate analysis. Rather, this court refused to sever the cases pursuant to the common scheme or plan exception pursuant to Pa.R.E. 404(b). The two theories often find themselves improperly interchanged. See Commonwealth v. Hicks, 156 A.3d 1114, 1130, n.1 (Pa. 2017) (Saylor, J., concurrence).

Such discretion will not be disturbed absent "a manifest abuse of discretion or prejudice and clear injustice to the defendant." Id. A mere error in judgment does not constitute an abuse of discretion. Commonwealth v. Jacoby, 170 A.3d 1065, 1090 (Pa. 2017). Rather, "if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." Id. (quoting Commonwealth v. Walker, 92 A.3d 766, 772-73 (Pa. 2014)).

Pennsylvania criminal rule 582 (A) provides in relevant part:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion;

Pa.R.Crim.P. 582(A)(1)(a).

"The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice." Commonwealth v. Melendez–Rodriguez, 856 A.2d 1278, 1282 (Pa. Super. 2004).

### a. The evidence of each offense would be admissible in a separate trial for the other.

Generally, evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. P.R.E.404(b)(2). Additionally, other crimes may be admitted to show a common scheme or "common design" proven by the commonalities of two or more crimes such that proof of one tends to prove the others. Commonwealth v. Newman, 598 A.2d 275, 278 (Pa. 1991).

Where, as here, the Commonwealth seeks to admit a prior bad act under the 404(b) "common plan" exception, the trial court must assess the similarity of the circumstances

surrounding the criminal conduct to determine whether they constitute a "signature." Commonwealth v. Tyson, 119 A.3d 353, 358-59 (Pa. Super. 2015). The similarities between crimes may not be limited to insignificant details or the crimes' statutory elements. Commonwealth v. Hughes, 555 A.2d 1264, 1283 (Pa. 1989). Within the specific context of sexual crimes, the Superior Court has previously noted:

> [the] essential elements of . . . sexual crimes will necessarily produce any number of similar characteristics when two acts . . . are scrutinized for shared features, particularly where, as we have here seen, there is commonality of roles and situs attendant the criminal episodes.

Commonwealth v. Frank, 577 A.2d 609, 614 (Pa. Super. 1990). Thus, courts must consider additional factors such as the similarity of the victims' race, age, and sex; the crimes' commonality of situs; commonality of relationships between the defendant and the victims; and any additional specific acts committed against each victim. Commonwealth v. O'Brien, 836 A.2d 966, 969-71 (Pa. Super. 2003).

In Commonwealth v. Lively, the Superior Court held that the facts of two sexual assaults tended to show a "common design" of abuse and that consolidation was proper where:

> The complainants . . . were both female, under the age of ten, nieces of the Appellant, and living in the same household . . . Moreover, the Appellant began his abusive relationship with both complainants by taking them to secluded rooms in the house, pulling down their pants and touching their genitals. He also used candy and toys in both cases to groom the children over a period of years. Finally, both complainants disclosed the abuse to their mother in the same week.

231 A.3d 1003, 1006-07 (Pa. Super. 2020).

In Commonwealth v. Smith, the Superior Court held that the similarities between two assaults substantially outweighed their slight differences and that consolidation was proper where:

> Both victims were twelve years old at the time of the crime; both victims were Hispanic; both victims had a close relationship to the appellant.; both victims were assaulted where the victim was residing that day; both victims reported the assault

involved vaginal sex; both victims knew the appellant through involvement in martial arts . . .

47 A.3d 862, 868 (Pa. Super. 2012).

Lastly, in Commonwealth v. Hughes, the Pennsylvania Supreme Court found that two crimes were sufficiently similar warranting consolidation, where:

> Both crimes involved young females . . .; both victims were non-Caucasian . . .; both crimes occurred during the daytime; both crimes took place within a four-block radius; both crimes took place within a five-minute walk from [the appellant's] home; both crimes involved circumstances in which the victim was lured or strong-armed off the street; both victims were taken to upstairs bedrooms of vacant buildings; in both crimes the assailant ordered the victims to undress; both crimes involved rape, other sex acts . . ., and manual strangulation; and both crimes involved circumstances in which the accused and the victims previously were acquainted.

555 A.2d 1264, 1282 (Pa. 1989)

Here, the factual circumstances of the abuse and implementation of same were sufficiently similar to warrant admissibility under Rule 404(b): (1) The juveniles were close in age, an approximate one year age difference; (2) both victims identified Appellant as the perpetrator; (3) both victims are Appellant's biological nephews; (4) both victims resided in the same home as Appellant at the time of assaults; (5) both victims are Black males; and (6) both victims discussed their abuse with one another.

Moreover, the identifiable commonalities in Appellant's acts justify the conclusion that the perpetrator of one was the perpetrator of the other. Commonwealth v. Hicks, 156 A.3d 1114, 1128 (Pa. 2017). Specifically, Appellant would (1) innocuously pull each victim away from ordinary home activities, (2) to a vacant bedroom, (3) undress herself almost always just short of total nudity, and (4) grind her genitals against the genitals of both prepubescent victims. There is undoubtedly a distinct connection between the crimes such that consolidation would be warranted.

Lastly, it should be emphasized that one victim was an eyewitness to the sexual assault performed on another. Direct evidence is "[e]vidence in [the] form of testimony from a witness who actually saw, heard or touched the subject of interrogation ... which, if believed, proves [the] existence of [a] fact in issue without inference or presumption." Commonwealth v. Johnson, 626 A.2d 514, 517 (Pa. 1993) (Cappy, J., Dissent) (citing *Black's Law Dictionary* 413 (5th ed. 1979)). Direct evidence is "more reliable and probative . . . direct evidence proves a fact without the necessity for the fact-finder to make additional deductions or inferences or presumptions." Id. At the very least, B.K.'s eyewitness testimony would serve as direct evidence in the trial of E.K, thus, bolstering this court's decision to maintain consolidation.

### b. The jury was not confused by the particular facts of the two matters.

The second prong of Rule 582 requires the trial court to assess whether consolidating offenses would confuse a jury. Pa.R.Crim.P. 582(A)(1)(a). "Where a trial concerns distinct criminal offense that are distinguishable in time, space, and the characters involved, a jury is capable of separating the offenses." Commonwealth v. Collins, 703 A.2d 418, 423 (Pa. 1997). Here, the facts were not so complex and intertwined that a jury would struggle to understand each discrete offense. The crimes involved different victims, each of whom testified to the details of his own assault and occurred, in large part, in different locations. See Commonwealth v. Boyle, 733 A.2d 633, 637 (1999) (finding no likelihood of jury confusion where testimony regarding a multi-transactional sting operation involved a "limited number of actors, essentially the same conduct, and provided a pattern of facts to the jury which was not complex.").

### c. The Appellant was not unduly prejudiced by consolidation.

In completing a determination of evidentiary admissibility, the trial court "must also consider whether consolidation would unduly prejudice the defendant." Commonwealth v. Lively,

231 A.2d 1003, 1006 (Pa. Super. 2020) (quoting <u>Commonwealth v. Knoble</u>, 188 A.3d 1199 (Pa. Super. 2018)). It has been established that,

> [t]he "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

<u>Commonwealth v. Newman</u>, 598 A.2d 275, 279 (Pa. Super. 1991). Such evidence would rise to a level "so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case" and would "divert the jury's attention away from its duty of weighing the evidence impartially." <u>Commonwealth v. Antidormi</u>, 84 A.3d 736, 750 (Pa. Super. 2014) (internal quotations omitted).

Importantly, however, "evidence will not be prohibited merely because it is harmful to [a] defendant." <u>Commonwealth v. Tyson</u>, 119 A.3d 353, 360 (Pa. Super. 2015) (holding that admission of a prior rape conviction to evidence a common plan or scheme was not unduly prejudicial.). Trial courts "[are] not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." <u>Id.</u> (quoting <u>Commonwealth v. Dillon</u>, 925 A.2d 131, 141 (Pa. 2007)). In fact, the Superior Court has held that "one factor in the 'undue prejudice' analysis—the Commonwealth's need to present evidence under the common plan exception—weighs heavily in favor of the Commonwealth." <u>Tyson</u>, 119 A.3d at 362.

In the case at bar, consolidation was not unduly prejudicial. The consolidation of these offenses was a necessary tool to evidence Appellant's common scheme and to insulate the

complainants from an inevitable credibility strike, which will be discussed below. See Commonwealth v. Smith, 47 A.3d 862, 869 (Pa. Super. 2012) (holding that the evidence of each rape was critical to corroborate the victims' testimony, and to deflect [a]ppellant's anticipated credibility attacks of the victims.). The undeniable probative value of each case goes far beyond an alleged showing of Appellant's propensity to commit sexual assault. Thus, the trial court's decision should be affirmed.

## II.  WEIGHT OF THE EVIDENCE

Once a weight of the evidence claim has been raised, it is the responsibility of the trial court to "review the evidence adduced at trial and determine whether notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." In re J.B., 106 A.3d 76, 95 (Pa. 2014) (internal quotes omitted).

It is well settled that,

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Shaffer, 40 A.3d 1250, 2012.

### a.  The inconsistencies cited by the Appellant are minor in light of the considerable consistencies of the victims' testimony.

Appellant asserts that there was a complete absence of credible evidence presented because the victims' trial testimonies were inconsistent with the forensic video interviews given during investigation. Counsel specifies that the boys could not remember dates or months the incidents took place, nor did the boys remember exactly where the alleged incidents took place.

What this court finds incredible is the expectation of children with an education level approximately ranging from kindergarten to first grade to maintain mental calendars of the exact times, dates, and months of their abuse. Timing of the assaults was certainly not the linchpin to Appellant's defense. The jury saw the forensic interview videos provided by the Philadelphia Children's Alliance where both children recounted, in uncomfortable detail, the abuse that occurred and where the abuse took place. See Commonwealth Ex. C-5, C-6. In the videos, each victim went as far as to physically act out how the Appellant positioned both her and their bodies while assaulting them. The victims mimicked her heavy breathing and the other sounds she made during the abuse. During trial testimony, both B.K. and E.K. remained substantially consistent with their recollection of events. In fact, the court and the jury had the displeasure of listening to young E.K. mimic Appellant's heavy breathing again after being sequestered. The complainants were overwhelmingly consistent with the forensic interviews and determined credible by twelve of Appellant's peers.

In addition to the hearing from the complainants, the jury had the benefit of hearing direct testimony from Appellant. Appellant stated that she had a good relationship with the victims and their mother, her sister, and that there were times in which her sister would ask Appellant to watch the victims. N.T. 1/9/20 at 100, 108. Later in her testimony, Appellant testified that in all the years she and the victims lived in the same home she never watched tv with the children alone, she never babysat them alone, never invited them to play with her, and the children never by invitation or even boyish mischief crossed the doorway of any room she slept in. Id. at 102-03. In comparing the evidence which included, testimony given by two separate victims, testimony by Appellant's, testimony from representatives of the Philadelphia's Children Alliance and the Department of

Human Services, testimony of a character witness, and the forensic videos, the jury found Appellant not credible and guilty.

Lastly, if there was initial fear that the jury would struggle to discern credibility and proper weight to attribute to the evidence, this court abated that concern by instructing the jury of factors to consider in making their determinations throughout trial. This court expressly stated:

> I will mention some of the factors which might bear on the credibility or weight of the evidence. Whether the witness has any interest in the outcome of the case; the behavior of the witness on the stand; their demeanor or manner of testifying; the accuracy of their memory and recollection; their ability and opportunity to acquire knowledge of or to observe the matter concerning which they testified; the consistency or inconsistency of their testimony; as well as its reasonableness or unreasonableness in light of all the evidence in the case.

N.T. 1/8/20 at 23.

The law presumes that the jury follows the court's instruction. Commonwealth v. Cash, 137 A.3d 1262, 1273 (Pa. 2016). The verdict was not against the weight of the evidence but rather, the evidence was heavily weighted against Appellant. Accordingly, the verdict should be affirmed.

## CONCLUSION

After reading the applicable evidence, statutes, case laws, and rules, this court has concluded that there are no prejudicial or reversible errors in Appellant's case. This court's decisions should be affirmed.

BY THE COURT

_____
Timika R. Lane, J.

# IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA          :
                                                  :      CP-51-CR-0009903-2017
       v.                                   :      CP-51-CR-0009904-2017
                                                  :
AALYIAH WHEELER-COATES          :      198 EDA 2021
                                                  :      199 EDA 2021

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel:     Michael N. Huff, Esquire
                             1333 Race Street
                             Philadelphia, PA 19107

Type of Service:    (✓) First Class Mail ( ) Certified ( ) Personal Service

District Attorney:   Paul George, Esq.
                             Supervisor, Appeals Unit
                             Philadelphia District Attorney's Office
                             Three South Penn Square
                             Philadelphia, PA 19107-3499

Type of Service:    (✓) First Class Mail ( ) Certified ( ) Personal Service

Defendant:           Aalyiah Wheeler-Coates, PD7032
                             SCI Muncy
                             PO Box 180
                             Route 405
                             Muncy, PA, 17756

Type of Service:    () First Class Mail (✓) Certified ( ) Personal
                             **Tracking Number: 7014 2120 0000 7322 8119**

Date: April 29, 2021

Kori Newallo
Law Clerk to the Honorable Timika Lane